In the matter of the account of MARGARET DOLAND, guardian of MARGARET CAHILL, et al.

MARGARET DOLAND, guardian, appellant,

*v.*

MICHAEL CAHILL, respondent.

[Argued June 27th, 1905.   Decided March 5th, 1906.]

1. An order of an orphans court (made after hearing upon an order to show cause) reciting that it appeared that a guardian had not paid over certain moneys to the party entitled, as directed by a previous order of the court, and that the guardian had willfully contemned the authority of the court, and thereupon ordering that the guardian be attached for contempt of court, and that an attachment do issue forthwith, &c.—*Held,*

in view of the practice of the court, not to be a definitive adjudication upon the question of contempt, but an interlocutory order, based upon the apparent guilt of the guardian, and directing an attachment to issue for the purpose of bringing her before the court to answer therefor.

2. An appeal from the orphans court to the prerogative court being allowed by statute only to a "person aggrieved" (*P. L. 1898 p. 793 § 204*) —*Held,* that by an order for the issuance of process of attachment, to bring in the party to answer for an alleged contempt, the party accused is not aggrieved so as to be entitled to an appeal, following *Coryell* v. *Holcombe, 9 N. J. Eq. (1 Stock.) 650.*

On appeal of Margaret Doland from a decree of the prerogative court. The opinion of Magie, Ordinary, is reported *ante p. 466.*

*Mr. Willard P. Voorhees,* for the appellant.

*Mr. Freeman Woodbridge* and *Mr. Henry B. Cook,* for the respondent.

The opinion of the court was delivered by

PITNEY, J.

Upon an accounting made before the Middlesex orphans court by Margaret Doland, as guardian of certain infants who were deceased, she was ordered to pay over to Michael Cahill, one of the heirs-at-law of the infants, the sum of $714.53. The guardian having, with notice of this decree, failed to pay over the money, the orphans court, on June 14th, 1904, upon petition of Michael Cahill, verified by affidavits, made an order requiring her to show cause, on July 5th, 1904, why she should not be attached for contempt of court. This order having been duly and personally served upon her, and the hearing upon it having been continued from time to time until September 21st, 1904, the orphans court on that day read and considered the petition of Cahill and the affidavits presented therewith, took the depositions of witnesses and considered the same in the presence of counsel; and thereupon made an order, dated the day last mentioned, shortly reciting the above matters, and proceeding as follows:

"And it appearing that the said Margaret Doland, general guardian of Mary and Margaret Cahill, infants, deceased, has not paid over to the said Michael Cahill the money in her hands as such general guardian, as directed by the order of this court, bearing date August 24th, 1903, or any part thereof, although she has been duly served with copies of the said order and account, and that she has willfully contemned the authority of this court: It is hereby, on this 21st day of September, 1904, ordered that the said Margaret Doland be attached for contempt of court in willfully refusing to obey the orders of this court in the premises, and that an attachment do issue forthwith against the said Margaret Doland."

From this order the guardian appealed to the prerogative court. That court dismissed her appeal on the ground that the order was not the subject of appeal, it not being an order by which she was aggrieved. From the action of the prerogative court in dismissing her appeal the present appeal is taken.

The learned ordinary was clearly correct in holding that the order of September 21st, 1904, was not the subject-matter of an appeal under the act of April 17th, 1884. *P. L. 1884 p. 219; 2 Gen. Stat. p. 2600.* That act provides for a review by the supreme court of summary convictions for contempt by any court inferior in its jurisdiction to the supreme court, *except the orphans court.*

The appeal to the prerogative court was therefore based upon section 204 of the Orphans Court act (*P. L. 1898 p. 793*), which gives a right of appeal to "any person aggrieved."

The ordinary held that the order in question was not a conviction or judgment for contempt, but only an order for the issuance of the process of attachment to bring in the accused to answer for the alleged contempt—an interlocutory order not concluding the party upon the merits—and that the guardian was not aggrieved thereby so as to be entitled to an appeal, citing as authority the decision of this court in *Coryell v. Holcombe, 9 N. J. Eq. (1 Stock.) 650.*

It is insisted by the learned counsel of the appellant that the ordinary misconstrued the order of September 21st, 1904; that according to the proper interpretation the orphans court thereby adjudged the guardian to be guilty of contempt, and ordered that she be attached for the contempt of which she was thus convicted. The fact that the order was made after the previous

allowance of an order to show cause, and after the taking of depositions in the court, is relied upon as tending to sustain this interpretation.

This circumstance is entitled to some weight, but, in our view, is not conclusive. The considerations which convince us that the interpretation adopted by the learned ordinary is correct are the following:

1. A definitive adjudication upon the question of contempt was not within the contemplation of the order to show cause. That order did not require the guardian to show cause why she should not be adjudged guilty of contempt, but "why she should not be attached for contempt of court." This plainly required her merely to show cause for the non-issuance of an attachment, and she had a right to suppose that if the rule were made absolute it would result merely in the issuance of an attachment, after which she would have a further day in court before being found guilty. The order of September 21st, 1904, is quite in line with this, if interpreted as the ordinary interpreted it.

2. The order of September 21st does not in terms *adjudge* the guardian to be guilty of contempt; it only declares that upon the petition, affidavits and depositions it *appears* that she has been thus guilty—that *apparently* she has willfully contemned the authority of the court.

3. If it had been the intent of the order of September 21st to definitively adjudge her in contempt, the court would probably have proceeded at the same time to impose a penalty, such as the commitment of the guardian into custody until she had paid over to Michael Cahill the moneys due to him, and had paid a fine in vindication of the dignity of the court, or the like. But the order commands only that she be "attached for contempt," and that an attachment do forthwith issue against her. An attachment is merely process requiring one to be arrested and produced before the court, and does not of itself import that when produced the party is to be punished. On the contrary, it is usually mesne process, not final.

4. But, still further, the order in question must be construed in the light of the ordinary practice of the court in such cases; and in view of that practice it should be held, we think,

not as a definitive adjudication, but as an interlocutory order, and this in spite of the fact that it was made after hearing upon a previous order to show cause.

From an early day the practice in contempt proceedings has varied, according to the circumstances of different cases. Thus Mr. Justice Blackstone says (referring, however, more particularly to cases where only the dignity of the court is involved, and not to those where rights of the opposite parties are concerned) :

"If the contempt be committed in the face of the court the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination. But in matters that arise at a distance, and of which the court cannot have so perfect a knowledge, unless by the confession of the party or the testimony of others, if the judges upon affidavit see sufficient ground to suspect that a contempt has been committed, they either make a rule on the suspected party to show cause why an attachment should not issue against him, or in very flagrant instances of contempt the attachment issues in the first instance, as it also does if no sufficient cause be shown to discharge, and thereupon the court confirms and makes absolute the original rule. This process of attachment is merely intended to bring the party into court, and when there he must either stand committed or put in bail, in order to answer upon oath to such interrogatories as shall be administered to him for the better information of the court with respect to the circumstances of the contempt. These interrogatories are in the nature of a charge or accusation, and must, by the course of the court, be exhibited within the first four days; and if any of the interrogatories is improper the defendant may refuse to answer it, and move the court to have it struck out." *4 Bl. Com.* 286, 287.

In this extract reference is made, as will be observed, to the practice of issuing an attachment upon making absolute the rule to show cause, the same practice that was adopted in the present instance. A notable instance of this practice is *Rex v. Beardmore,* 2 *Burr.* 792 (*1759*).

So in the *Cheeseman Case,* 49 *N. J. Law* (20 *Vr.*) 115, 142, Mr. Justice Dixon said, speaking for the supreme court: "No doubt the ordinary course of practice in such cases in courts of law is that an affidavit of the facts should first be presented; then that a rule should be entered requiring the alleged offender to show cause why he should not be attached for contempt; then, if good cause be not shown, that an attachment should

issue, and the accused, on being brought in, should be either held to bail or committed to answer interrogatories; then, that interrogatories should be exhibited and answered; and thereupon, according as his answers confess or deny his guilt, he should be punished or discharged. But the practice has not been uniform. Sometimes a rule to show cause has been allowed without an affidavit, on a mere suggestion; sometimes an attachment has issued without a rule to show cause; sometimes punishment has been inflicted forthwith on the offender's confession when brought in by the writ, without interrogatories, and sometimes, as in *McQuade* v. *Emmons, 38 N. J. Law (9 Vr.) 397,* the penalty has been imposed on the offender's admissions made under the original rule, without either writ or interrogatories."

Nor need we go to the extent of declaring that the alleged contemnor has the right to exculpate himself by his answers to the interrogatories, so that an adjudication of guilt made without the exhibition of interrogatories or contrary to his responses thereto, would be beyond the jurisdiction of the court, as intimated, *arguendo,* in the opinion last cited. The cases referred to by Mr. Justice Blackstone upon this head are authorities to the effect that the courts of law in ordinary cases *would not,* rather than that they could not lawfully, fine or imprison for contempt of court, without according to the accused the opportunity of exculpating himself by making response to interrogatories. It is true he does plainly say (*4 Bl. Com. 288*) that the method of examining the delinquent himself upon oath, with regard to the contempt alleged, has, by long and immemorial usage, become the law of the land. But the cases he refers to hardly bear him out in declaring this to be the *invariable* practice, nor warrant the conclusion that the courts of law have no power to punish for contempt contrary to the sworn denial of the accused on the return of the attachment.

Moreover, as Blackstone himself observes (*4 Bl. Com. 288*) in the court of chancery the answers of the alleged contemnor were subject to be contradicted. Even in the courts of law it is not clear that in proceedings having for their object the

enforcement of the rights of a litigant (as the performance of an award, or the like), the party in contempt could ever gain his discharge by a mere denial under oath.

Whatever may be the correct view of these matters, it is certain that the practice of submitting interrogatories upon the return of an attachment for contempt has obtained in our courts, both of law and equity, from an early period. In *Coryell* v. *Holcombe, 9 N. J. Eq. (1 Stock.) 650* (at *p. 653*), it appears that interrogatories were exhibited. In *Magennis* v. *Parkhurst, 4 N. J. Eq. (3 Gr. Ch.) 433*, and in *Jewett* v. *Dringer, 27 N. J. Eq. (12 C. E. Gr.) 271*, the same practice was pursued. So, in the supreme court, in *State* v. *Fisler, 6 N. J. Law (1 Halst.) 305, 371*. In the court of chancery the practice is regulated by rules Nos. 133 and 134, promulgated September 8th, 1817, and rules Nos. 135, 136 and 137, promulgated May 21st, 1822. These rules provide that upon the return of an attachment for contempt with the defendant in custody, or upon his appearance on the return day pursuant to his bond given at the time of arrest, the opposite party shall exhibit interrogatories and enter a rule for the defendant's examination before a master. And, by statute, the practice in the orphans court with respect to attachment for enforcing performance of orders requiring the payment of· money is made conformable to the practice in chancery. *P. L. 1898 p. 785 § 184.*

Upon the whole, therefore, we hold that the order of September 21st, 1904, had not the effect of determining the question of the appellant's guilt, but only of determining that she was apparently guilty, and that for this reason an attachment should be issued against her, upon the return of which, according to the ordinary practice of the court, she would have a further hearing upon the question of her guilt. This being so, it follows, upon the authority of *Coryell* v. *Holcombe, 9 N. J. Eq. (1 Stock.) 650*, that she was not in a legal sense aggrieved by the order, and not entitled to appeal therefrom to the prerogative court.

The dismissal of her appeal was therefore proper, and the order of dismissal should be affirmed, but without costs.

*For affirmance*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VROOM, GREEN, GRAY—11.

*For reversal*—None.